# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| Henry E. Baker, | |
| Plaintiff, | 3:16-cv-00236 JWS |
| vs. | ORDER AND OPINION |
| Robinson Tait, P.S., *et al.* | [Re: Motion at Docket 22] |
| Defendants. | |

## I. MOTION PRESENTED

Defendant Ocwen Loan Servicing, LLC ("Ocwen") removed this case from the Alaska Superior Court to this court pursuant to 28 U.S.C. § 1446. At docket 22 plaintiff Henry E. Baker ("Baker") moves pursuant to 28 U.S.C. § 1447(c) to remand the case based on the lack of subject matter jurisdiction. Baker supports his motion with his own affidavit at docket 23 and a memorandum at docket 24. Ocwen opposes the motion at docket 33, supported by a memorandum at docket 34. Baker replies at docket 40.

Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

According to Baker's complaint, defendant Robinson Tait, P.S. ("Robinson Tait") is attempting to sell his home at foreclosure as the successor trustee of a deed of trust ("DOT") to which Ocwen is the purported beneficiary.  Baker alleges that his home loan is a "VA loan,"[1] meaning that Ocwen is contractually prohibited from foreclosing on him without first notifying the Secretary of Veteran's Affairs of the possible foreclosure[2] and informing him "of his right to contact the VA for mortgage assistance."[3]  Baker claims that Ocwen breached the parties' contract by not complying with these requirements.[4]

Baker also asserts a number of claims against Robinson Tait.  He claims that Robinson Tait:

    (1) is committing wrongful foreclosure by attempting to foreclose on him even though Ocwen has not complied with its contractual obligations;[5]

    (2) lacks authority to act as the DOT's successor trustee due to an invalid appointment;[6]

    (3) violated Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPCPA")[7] by sending him a misleading notice, dated April 19, 2016, that violates the Fair Debt Collection Practice Act ("FDCPA")[8] because it

---

[1] Doc. 6-4 at 2 ¶ 10.

[2] *Id.* at 5 ¶ 22 (citing 38 U.S.C. § 3732).

[3] *Id.* (citing 38 C.F.R. § 36.4350).

[4] *Id.* at 6 ¶ 28.

[5] *Id.* at 8 ¶ 36.

[6] *Id.* at 3 ¶ 15; 7 ¶ 32.

[7] AS 45.50.471–.561.

[8] 15 U.S.C. § 1692–92p.

"fails to tell [him] how to contact his original creditor and that, if [he] requested verification of the debt, all collection activity by [Ocwen and Robinson Tait] would cease;"[9]

(4) violated the UTPCPA by falsely claiming that it is the successor trustee under the DOT;[10]

(5) violated the UTPCPA by issuing Baker a misleading and confusing notice of default ("NOD");[11]

(6) violated the UTPCPA by misstating which entity executed the allegedly invalid appointment;[12] and

(7) violated its fiduciary duty to Baker by acting in the above-described manner.[13]

Baker's complaint seeks actual and statutory damages and an injunction prohibiting Ocwen and Robinson Tait from foreclosing on him until (1) Ocwen complies with the rules and regulations governing VA loans[14] and (2) they both "comply with the Alaska statute governing non-judicial foreclosures."[15]

Ocwen's notice of removal asserts that this court has both federal question and diversity jurisdiction.[16]

---

[9]Doc. 6-4 at 8–9 ¶ 39. *See also id.* at 3 ¶ 16.

[10]*Id.* at 9 ¶ 42.

[11]*Id.* ¶ 45.

[12]*Id.* at 10 ¶ 49.

[13]*Id.* at 6 ¶ 26.

[14]*Id.* at 7 ¶ 30.

[15]*Id.* ¶ 33.

[16]Doc. 1.

## III.  STANDARD OF REVIEW

"A motion to remand is the proper procedure for challenging removal."[17] The removal statute should be strictly construed against removal and any doubts as to the right of removal are to be resolved in favor of remand to the state court.[18] "The presumption against removal means that 'the defendant always has the burden of establishing removal is proper.'"[19] That is, the defendant has the burden of proving all jurisdictional facts.

## IV.  DISCUSSION

### A.    Federal Question Jurisdiction

A defendant may remove to federal court any state court action that the plaintiff could have brought "in federal district court originally, 28 U.S.C. § 1441(a), as a civil action 'arising under the Constitution, laws, or treaties of the United States,' § 1331."[20] The Supreme Court has long held that even state-law claims can satisfy federal "arising under" jurisdiction if they "implicate significant federal issues."[21] Although this means that state-law claims are not kept out of federal court "simply because they appeared in state raiment," "federal issue" is not "a password opening federal courts to any state action embracing a point of federal law."[22] To determine whether a federal issue

---

[17] *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

[18] *Id.*

[19] *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

[20] *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

[21] *Id.*

[22] *Id.* at 314.

suffices to confer "arising under" jurisdiction, the court must determine whether "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress" (the *Grable* factors).[23]

Ocwen argues that Baker's complaint raises two federal issues: (1) whether the rules that govern VA loans "cited in the complaint carry the force of law and whether Defendants violated them; and (2) whether [the FDCPA] is enforceable against Defendants and whether they violated it."[24] The court will apply the *Grable* factors to these two arguments in turn.

**1.    The VA rules**

Baker alleges that Ocwen has violated two rules governing VA loans: 38 U.S.C. § 3732 and 38 C.F.R. § 36.4350 (the "VA rules"). As Ocwen observes, these alleged VA rules violations relate to three of Baker's causes of actions: Baker's breach-of-contract claim is based on Ocwen's alleged VA rules violations;[25] and Baker's second wrongful foreclosure claim and breach-of-fiduciary-duty claim (at least in part) are based on Robinson Tait's decision to proceed with foreclosure despite Ocwen's alleged VA rules violations.[26] The parties do not dispute that these are all state-law causes of action.

---

[23]*Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (citing *Grable*, 545 U.S. at 314).

[24]Doc. 34 at 1–2.

[25]Doc. 6-4 at 6–7 at ¶ 28.

[26]*Id.* at 8 ¶ 36.

-5-

Applying the first *Grable* factor, Ocwen argues that Baker's causes of action necessarily raise a federal issue: whether Ocwen violated the VA rules.²⁷ Baker disagrees. For example, he states that his breach-of-contract claim merely requires him to show that Ocwen had a contractual duty, Ocwen breached that duty, and Baker suffered damages as a result.²⁸ On a superficial level, Baker is correct. Yet his argument is unpersuasive. When applying the first *Grable* factor, the court's job is not to focus on the prima facie elements of the state cause of action, but rather to determine "litigation reality."²⁹ In reality, Baker must show that Ocwen violated the VA rules in order to prevail on his breach-of-contract claim because that is the only breach alleged by Baker. The first *Grable* factor is satisfied.

Ocwen's argument founders on *Grable*'s next two factors. With regard to these factors, which ask whether the issue raised is "actually disputed and substantial," Ocwen merely concludes without explanation that "the interpretation of federal law is it is [sic] determinative to the outcome."³⁰ This vague statement is insufficient to meet Ocwen's burden. In order to invoke this court's limited jurisdiction, Ocwen must at least establish the basis of the parties' dispute. For example, in *Grable* the plaintiff interpreted 26 U.S.C. § 6335 to require personal service of a written seizure notice; the

---

²⁷Doc. 34 at 7–8.

²⁸Doc. 24 at 7.

²⁹13D Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3562 (3d ed. 2017). *See, e.g., Gunn*, 133 S. Ct. at 1065 (noting the prima facie elements of a legal malpractice claim under Texas law, but holding that the plaintiff's particular claim necessarily raised a federal issue because the court would be required to apply federal patent law to the facts of the case).

³⁰Doc. 34 at 8.

defendant interpreted that same statute as allowing service by certified mail.[31] In *Gunn*, the plaintiff argued that a particular provision of federal patent law applied to the facts that would have changed the outcome of the plaintiff's patent case if his lawyer had presented such an argument; the defendant argued that the provision did not apply.[32] Here, the court has no idea what Ocwen's interpretation of the VA rules is, or how Baker's interpretation differs from Ocwen's.[33]

This deficiency relates not only to the question whether the meaning of the VA rules is "actually disputed," but also whether the parties' dispute is substantial. "The 'substantial question' branch of federal question jurisdiction is exceedingly narrow—a 'special and small category' of cases."[34] The substantiality factor requires Ocwen to show that the parties' dispute is regarding "an important issue of federal law that sensibly belongs in a federal court.[35] Although Ocwen notes the federal government's undeniable interest in "maintaining its military and looking after veterans,"[36] it does not

---

[31]*Grable*, 545 at 314–15.

[32]*Gunn*, 133 S. Ct. at 1065.

[33]*See, e.g., Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 257 (3d Cir. 2016) (holding that no question of federal law was actually disputed because the parties' dispute was factual in nature); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1300 (11th Cir. 2008) ("[W]e are not persuaded that the meaning of the relevant federal law is unclear. Here, the defendants correctly concede that federal law prohibits participation by both buyers and sellers in straw purchases of firearms."); *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 552 (6th Cir. 2006) (defendant failed to show that the "meaning of the two statutes cited by the plaintiff is . . . in serious dispute.").

[34]*Gilmore v. Weatherford*, 694 F.3d 1160 (10th Cir. 2012) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

[35]*Grable*, 545 U.S. at 315.

[36]Doc. 34 at 9.

-7-

explain how this case might substantially affect that interest. The court has no idea whether the outcome of this case "could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases," or if the parties' dispute "is the sort of 'fact-bound and situation-specific' claim whose resolution is unlikely to have any impact on the development of federal law."[37]

Because Ocwen has failed to establish the second and third *Grable* factors, the court need not consider whether the fourth *Grable* factor is satisfied.

### 2. The FDCPA

Baker's four UTPCPA causes of action against Robinson Tait cross-reference the FDCPA.[38] Each claim alleges that Robinson Tait made a false or misleading statement that violates both the FDCPA and the UTPCPA. Ocwen argues that these state-law causes of action raise federal issues that suffice to confer federal question jurisdiction. The court disagrees.

*Nevada v. Bank of America*[39] is on point. There, the State of Nevada brought an action against Bank of America alleging "that Bank of America misled Nevada consumers about the terms and operation of its home mortgage modification and foreclosure processes, in violation of the Nevada Deceptive Trade Practices Act"

---

[37]*Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14–15 (1st Cir. 2013) (quoting *Empire Healthchoice*, 547 U.S. at 701). *See also Brown-Parker v. Wachovia Mortg.*, No. CV 12-00810-RGK, 2012 WL 10640836, at *2 (C.D. Cal. Apr. 26, 2012) ("The interpretation of any HAMP provisions that may be necessary to resolve a breach of contract claim does not raise a substantial issue of federal law.").

[38]Count V, VI, VII, and VIII. Doc. 6-4 at 8–10.

[39]*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012).

-8-

("DTPA").[40] The DTPA gives the Nevada Attorney General authority to bring a civil action against any person who "has engaged or is engaging in a deceptive trade practice."[41] Similar to Baker's complaint in this case, Nevada's complaint cross-referenced federal law: Nevada alleged that some of Bank of America's actionable misrepresentations related to the federal Home Affordable Mortgage Program ("HAMP")[42] and constituted violations of the FDCPA.[43]

In holding that federal question jurisdiction did not exist, the Ninth Circuit found that Nevada's complaint did not satisfy the first or fourth *Grable* factors. The court held that the first factor (whether a federal issue was "necessarily raised") was not satisfied because any federal law theories of liability were alternative and independent to state law theories. "'When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim.'"[44] Although the Nevada statute contains a "borrowing" provision, making it a violation of the DTPA to violate a "federal statute or regulation relating to the sale or lease of goods or services,"[45] that does not automatically convert

---

[40]*Id.* at 664 (citing the DTPA, Nev. Rev. Stat. §§ 598.0903–.0999).

[41]Nev. Rev. Stat. § 598.0963(3).

[42]12 U.S.C. § 5219a.

[43]*Nevada*, 672 F.3d at 674. *See also id.* at 675 ("The gravamen of the Complaint is that Bank of America violated Nevada's DTPA through numerous misrepresentations, some about the HAMP program, and some which also violate the FDCPA.").

[44]*Id.* at 675 (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)).

[45]Nev. Rev. Stat. § 598.0923(3).

all DTPA claims subject to that provision into federal causes of action.⁴⁶ "Nevada's glancing reference to federal law is insufficient to confer federal jurisdiction over Nevada's state law claims."⁴⁷

With regard to the fourth *Grable* factor, the Ninth Circuit observed that "[s]tate courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes."⁴⁸ To hold that federal courts have jurisdiction over all of these cases would "'herald[ ] a potentially enormous shift of traditionally state cases into federal courts.'"⁴⁹

In order for Baker to prevail on his UTPCPA claims, he must establish that Robinson Tait has committed "unfair or deceptive acts or practices in the conduct of trade or commerce."⁵⁰ As Ocwen points out, the text of the UTPCPA does not contain a borrowing provision that makes it a per se violation of the UTPCPA to violate a federal consumer protection statute. But, the UTPCPA does state that "[i]n interpreting AS 45.50.471 due consideration and great weight should be given the interpretations of . . . § 5(a)(1) of the Federal Trade Commission Act."⁵¹ Relying on this provision, the

---

⁴⁶*Nevada*, 672 F.3d at 675. *See also Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) ("Lippitt does not have to rely on a violation of the Exchange Act nor an infraction of an NYSE rule or regulation to bring a UCL claim in California state court. He merely has to allege that Defendants' conduct was either unfair or fraudulent.").

⁴⁷*Nevada*, 672 F.3d at 675.

⁴⁸*Id.* at 676.

⁴⁹*Id.* (quoting *Grable*, 545 U.S. at 319).

⁵⁰AS 45.50.471(a).

⁵¹AS 45.50.545 (citing 15 U.S.C. § 45(a)(1)).

-10-

Alaska Supreme Court has held that a violation of the FDCPA "is inescapably an 'unfair or deceptive act [ ] or practice[ ]" under AS 45.50.471(a)" because it falls "within at least the penumbra of some . . . statutory . . . concept of unfairness."[52] Thus, establishing Robinson Tait's FDCPA violations is sufficient but unnecessary to Baker's claims. This is essentially the same situation presented in *Nevada*.[53]

Ocwen has not met its burden of proving federal question jurisdiction.

**B.    Diversity Jurisdiction**

A defendant may also remove to federal court any state court action of which the federal district court has original diversity jurisdiction[54] because it is between citizens of different states and the matter in controversy exceeds $75,000.[55] There is no dispute here that this action is between citizens of different states. The parties dispute whether the amount in controversy exceeds $75,000.

If a defendant seeks removal based on diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."[56] Where, as here, "the plaintiff's complaint does not state the amount in controversy, the

---

[52]*Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 226 (Alaska 2016) (quoting *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535 (Alaska 1980)).

[53]Ocwen's reliance on *Holmes v. Cornerstone Credit Servs.*, No. 3:10-cv-0002-RRB, 2010 U.S. Dist. LEXIS 44638 (D. Alaska May 6, 2010), is misplaced. Contrary to Ocwen's description, the complaint in *Holmes* did not merely reference the FDCPA; it requested injunctive relief under the FDCPA. Based on that request, the court held that federal question jurisdiction existed. *Id.* at *8.

[54]28 U.S.C. § 1441(a).

[55]28 U.S.C. § 1332(a).

[56]28 U.S.C. § 1446(c)(2).

-11-

defendant's notice of removal may do so."[57]  "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."[58]  "If the plaintiff contests the defendant's allegation, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."[59]  The removing defendant bears the burden proof.[60]  Thus, "the defendant must establish facts showing that the amount in controversy requirement is met, after which the burden shifts to the plaintiff seeking remand to show that the requirement is not met."[61]

Ocwen asserts that Baker's alleged damages are likely to be approximately $48,000.[62]  It bases this amount on a number of assumptions.  Ocwen assumes that Baker will likely assert that he is entitled to recover the difference between his current home equity ($0) and what his home equity would be if Ocwen had complied with the VA rules and he had received a loan modification ($16,000).  Ocwen calculates this $16,000 figure by stating that Baker would have accrued $1,000 in equity each of the sixteen months between September 2015 to January 2017.  Then, Ocwen multiples this

---

[57]*Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)).

[58]*Id.* at 554.

[59]*Id.* at 554.

[60]*Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1121-22 (9th Cir. 2013).

[61]14AA Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3702.2 (4th ed. 2017).

[62]Doc. 34 at 17–18.

-12-

$16,000 figure by three in accord with the UTPCPA's treble damages provision[63] to reach $48,000. Ocwen arrives at an amount in controversy that exceeds the jurisdictional minimum by adding approximately $32,000 in attorney's fees and the likely $15,000 cost of re-initiating foreclosure proceedings if Baker's requests for injunctive relief are granted.[64] Ocwen submits no evidence in support of any of these calculations. Baker refutes them, asserting that he is seeking only $2,000 in statutory damages.[65]

Ocwen's argument is unpersuasive for at least three reasons. First, by failing to submit any evidence in support of its calculations, Ocwen has again fallen well short of meeting its burden. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture;"[66] the removing defendant must support its allegations with proof. The proof may come in the form of either direct or circumstantial evidence, but Ocwen cannot simply pull figures from thin air.[67]

Second, even assuming without deciding that Ocwen has accurately calculated Baker's attorney's fees, Ocwen has failed to articulate any reasonable basis for its

---

[63] AS 45.50.531(a).

[64] Doc. 34 at 18–20.

[65] Doc. 40 at 4.

[66] *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). *See also* 14AA Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3702.2 ("Conclusory assertions will not be sufficient, especially since removal jurisdiction is to be construed narrowly.").

[67] *Ibarra*, 775 F.3d at 1199 ("As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them.").

-13-

assumption that Baker would be accruing $1,000 in equity each month if he had received a loan modification in September 2015, or for its assumption that it will cost $15,000 to comply with Baker's requested injunction. Ocwen supports these calculations with neither evidence nor any articulated rationale.

Third and finally, Baker concedes that his actual damages are less than $167 per UTPCPA violation, entitling him to statutory damages of $2,000 for all four of his UTPCPA causes of action. Having stipulated to the value of these claims, Baker will be bound by that stipulation as he pursues his case in the state court system. Thus, even if Ocwen's estimates for attorney's fees and injunctive relief costs are accurate, the amount in controversy would still be below the jurisdictional threshold.

## V. CONCLUSION

For the reasons set forth above, Baker's motion to remand at docket 22 is granted. Ocwen's pending motion to dismiss at docket 35 is denied without prejudice to renewal in state court. The case is remanded to the Alaska Superior Court from which it was removed.

DATED this 17th day of May 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT